**In re BEACON HILL APARTMENTS, LTD., a Georgia Limited Partnership.**

**BEACON HILL APARTMENTS, LTD.**

**v.**

**COLUMBIA SAVINGS AND LOAN ASSOCIATION.**

**Civ. No. 1:89–cv–2720–ODE.**

United States District Court,
N.D. Georgia,
Atlanta Division.

April 13, 1990.

---

John Anthony Christy, Schreeder, Wheeler & Flint, Atlanta, Ga., for plaintiff.

James Peyton Smith, Arnall, Golden & Gregory, Macon, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This case is before the court on appeal from a bankruptcy ruling.

This case arises from a dispute regarding the value of certain property owned by the debtor Beacon Hill Apartments, Ltd. ("Beacon Hill"). In a proposed plan of reorganization, Beacon Hill valued the property at $3.8 million and proposed to treat 3.8 million of the debt owed to Columbia Savings and Loan Association ("Columbia") as secured, with the remainder being treated as unsecured. Columbia objected to this valu-ation, contending that the property is worth more than 3.8 million. Following a hearing, the bankruptcy court valued the property at $4.3 million, and held that Columbia's claim was secured for that amount. Beacon Hill filed a timely notice of appeal from the bankruptcy court's order. It argues that the bankruptcy court erred in failing to disallow disposition costs (*i.e.*, costs the creditor would incur in disposing of the property). Beacon Hill also argues that the bankruptcy court erred in including accrued taxes as part of the secured claim.

The parties agree that the major issue before the court is the resolution of conflicting authority regarding the deduction of disposition costs from the creditor's secured claim. Beacon Hill asserts that in determining the secured amount of a creditor's claim, the court must focus on the creditor's interest in the property. Beacon Hill asserts what appears to be the majority approach, that the creditor's interest in property is defined by what the creditor could realize on a sale of the property, deducting therefrom the costs of advertising and sale. Any other approach, asserts Beacon Hill, focuses on the estate's interest in the property.

Columbia asserts that Beacon Hill's disposition costs argument was not timely advanced. Alternatively, Columbia asserts that this court should follow the courts that have ruled that disposition costs should not be deducted from the amount of the creditor's secured claim when the debtor is permitted to retain the property that secures the claim. In support of this assertion, Columbia points to recent decisions that appear to undermine the authority for deducting disposition costs from secured claims.

■ With regard to the bankruptcy court's disposition of the tax liens, both parties agree that the value of prior tax liens must be subtracted from the amount of a creditor's allowed secured claim. *See In re Darnell*, 834 F.2d 1263 (6th Cir.1987). Columbia, however, asserts that Beacon Hill failed to meet its burden of raising this issue below, and therefore should not be

heard on this issue now. *Cf. In re 222 Liberty Associates,* 105 B.R. 798 (Bankr.E.D.Pa.1989) (holding debtor has burden of raising issue of prior tax lien, and using low figure for tax lien due to debtor's failure to meet its burden).

The tax liens before the court should have been subtracted from the secured amount of Columbia's claim. The issue was raised, although scarcely and belatedly, before the bankruptcy judge [Debtor's Brief in Support of Valuation and in Support of its Motion to Re-open and Amend the Record, pg. 2]. As such, an allowed prior claim was before the court that should have been a factor in the valuation of Columbia's secured claim. *See* 11 U.S.C. § 502(a) ("[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects."). This is not to say that the full amount of the tax lien asserted should be deducted from Columbia's secured claim, but rather that the bankruptcy court must take the claim into account when determining how much of Columbia's claim is secured. *See In re 222 Liberty Associates, supra.*

The question regarding deduction of disposition costs from the secured amount of a creditor's claim is a much less clear area of the law. The conflict centers around the proper interpretation of 11 U.S.C. § 506(a). That statute reads as follows:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Many bankruptcy courts, focusing on the language "is a secured claim to the extent of the creditor's interest in the estate's interest", have held that a court's valuation should focus on the creditor's interest. These courts generally hold that the creditor, in converting its collateral into cash, must incur sales and/or advertising expenses that should be deducted from the secured amount of the creditor's claim. *See In re Boring,* 91 B.R. 791 (Bankr.S.D. Ohio 1988); *In re Claeys,* 81 B.R. 985 (Bankr.D.N.D.1987); *In re Paige,* 13 B.R. 713 (Bankr.S.D.Ohio 1981).

Another line of cases, however, focuses on the second sentence of the rule. That sentence commands that the value of the creditor's interest "be determined in light of the purpose of the valuation and of the proposed disposition or use of such property...." These cases hold that if the debtor is to continue to use the property, the "proposed disposition or use of the property" does not involve any sales costs, and thus no deduction should be taken for disposition costs that were not incurred. *See In re Usry,* 106 B.R. 759 (Bankr.M.D.Ga. 1989); *In re 222 Liberty Associates,* 105 B.R. 798 (Bankr.E.D.Pa.1989); *In re Courtright,* 57 B.R. 495 (Bankr.D.Or.1986).

On first reading, the latter interpretation of the statute makes the most sense. As stated in *In re Courtright,* if the court's sole focus is to be on the creditor's interest "then the last sentence of the statute which provides that the value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of the property, would be surplusage." *Courtright,* 57 B.R. at 497. Judge Queenan's oft-cited article on this subject, however, proposes a reading of the statute that focuses on the creditor's interest without rendering the second sentence surplusage. *See* J. Queenan, *Standards for Valuation of Security Interests in Chapter 11,* 92 Com.L.J. 18 (1987). Judge Queenan would read the second sentence as referring to the fact that the debtor's proposed use for the property might be relevant to the court's determination of the value of the

property, and hence the creditor's interest in the property. *Id.* at 37.

The court rejects this reading of the statute for two reasons. First, the former approach better comports with the court's common-sense reading of the statute. Second, if the proposed use of the property is relevant to the value of the property and the creditor's interest therein, why would only one aspect of the valuation, namely disposition costs, be singled out and excluded from being affected by the proposed use of the property?

The court finds support for this interpretation in the legislative history of the statute, and in recent case law that undermines the seminal case interpreting the statute otherwise. The legislative history of § 506(a) defines the amount of the creditor's secured claim to be "the extent of the value of his collateral" and states that the claim is unsecured for the balance of the amount of the claim. H.R.Rep. No. 595, 95th Cong., 1st Sess. 356, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6312. As such, the focus of the legislative history is on the value of the collateral without deduction for disposition costs. The court's consideration of the meaning of this statute repeatedly raised the issue, pointed out by the legislative history, that "[c]ourts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case." *Id.*

In addition, while the majority of the published decisions reads this statute differently, "a growing number of courts have rejected this line of reasoning, and have refused to deduct the sale costs in rendering a § 506 calculation unless the debtor's plan contemplates selling the property on the open market." *In re 222 Liberty Associates*, 105 B.R. at 803. In this case, the debtor's plan contemplates that

the debtor will retain possession of the property until 1996, at which time the property will either be sold or refinanced. [Beacon Hill Apartments, Ltd.'s Plan of Reorganization, pg. 17].

One of the best reasoned of the majority line of cases, *In re Claeys*, 81 B.R. 985 (Bankr.D.N.D.1987), argues persuasively that "[t]he fact that a debtor intends to retain the collateral does not emasculate the fact that it is in the first instance the creditor's interest in the collateral that must be valued." *Id.* at 991. Such reasoning has recently been criticized, however, as being based on questionable authority [1]. For instance, *Claeys* cites *Ahlers* and *American Mariner* for the proposition that

adequate protection is premised on the theory that a creditor bargains for the right to take possession of the collateral and sell it in the event the debtor defaults and in fashioning adequate protection one must determine what the creditor could have realized upon disposition, taking into account the usual time and expense involved in repossession and sale.

*Claeys*, 81 B.R. at 991. While the cited appellate opinions do refer to the creditor's right to take possession and sell the collateral, the opinions focus on the sale of the collateral, without discussion of disposition costs. *See Ahlers*, 794 F.2d at n. 5; *American Mariner*, 734 F.2d at 435. Other authority relied on in deducting disposition costs is equally susceptible of differing interpretations. *See Matter of Parr*, 30 B.R. 276 (Bankr.N.D.Ala.1983) (sale of the property was contemplated); *Matter of QPL Components, Inc.*, 20 B.R. 342 (Bankr.E.D. N.Y.1982) (sale contemplated, determining whether to value inventory at wholesale or retail by focusing on debtor's business), *In re Paige*, 13 B.R. 713 (Bankr.S.D.Ohio

---

1. A significant influence in [*Claeys'* decision] to consider costs of sale in valuation seems to be the holdings of the Ninth Circuit Court of Appeals in *Crocker National Bank v. American Mariner Industries (In re American Mariner Industries)*, 734 F.2d 426 (9th Cir.1984) and the Eighth Circuit in *Ahlers v. Norwest Bank of Worthington (In re Ahlers)*, 794 F.2d 388 (8th Cir.1986), *rev'd*, 485 U.S. 197, 108 S.Ct.

963, 99 L.Ed.2d 169 (1988). [This] analysis ... was considerably undercut, however, by the Supreme Court's reversal of *Ahlers* and more particularly by that court's decision in *United Savings Association of Texas v. Timbers Of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). *In re Balbus*, 104 B.R. 767, 769 (Bankr.E.D.Va. 1989).

1981) (early payoff of claim less disposition costs resulted in minimal loss to creditor). The court thus finds that the authority supporting the majority line of cases does not mandate the majority result, and in fact can be read to support the results reached by the minority but "growing number of courts."

■ The court thus returns to the proposition adopted by cases on both sides of this issue and espoused by the legislative history—that value is to be determined according to the facts of each case. On the facts of this case, the secured amount of Columbia's claim should not be reduced by disposition costs that were never incurred.

The facts before the court include the parties' agreement concerning allocation of disposition costs. The Deed to Secure Debt and Security Agreement entered into between the parties defines the rights for which the creditor bargained and the amount that the creditor could have realized upon repossession and sale[2]. That document reveals that Columbia bargained for and was granted the right to

> sell and dispose of the Premises at public auction ... first advertising the time, terms and place of such sale ... and [Columbia], or its assigns, shall collect the proceeds of such sale, reserving therefrom all unpaid Secured Indebtedness with interest then due thereon, and all amounts advanced by [Columbia] for taxes, assessments, fire insurance premiums and other charges, with interest at the Default Rate set forth in the Note, or the highest rate permitted by applicable law, whichever is lower, from the date of payment, together with all costs and charges for advertising, and customary third-party commissions for selling the Premises, and reasonable attorneys' fees actually incurred by [Columbia], and pay over any surplus to [Beacon Hill]. ...

Deed to Secure Debt and Security Agreement, pp. 11–12. Thus, the bargained-for agreement between the parties contem-

plates that Beacon Hill will pay any disposition costs.

This analysis reaches the same result that would occur if the trustee sold the property and attempted to recoup its disposition costs under 11 U.S.C. § 506(c). In such a case, § 506(c) allows the trustee to recover from the property "the reasonable, necessary costs and expenses of preserving or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c). Cases interpreting this statute have held that secured creditors do not "benefit" from the trustee's sale of property unless they receive more from the trustee's disposition of the property than they would have received had they foreclosed themselves. Cf. In re Williamson, 94 B.R. 958 (Bankr.S.D.Ohio 1988) (finding that usually the benefit consists of saved foreclosure costs). Thus, if the property were sold by the trustee in this case, the expenditure of disposition costs would not result in any benefit to Columbia in that if Columbia had foreclosed itself it would not be liable for the disposition costs. The court's result is thus consistent with the result that would be reached under § 506(c) had the trustee sold the property and sought to recover disposition costs.

Finally, on the facts of this case, it was within the discretion of the bankruptcy judge to refuse to re-open the evidence to consider the issue of disposition costs. After the hearing on the merits, Beacon Hill moved to re-open and amend the record to enter evidence regarding disposition costs. The bankruptcy judge denied this motion, although the denial was based on the grounds that the evidence would not be relevant given the court's interpretation of § 506(a). It is clear, however, that any decision regarding whether to reopen the evidence is a matter of judicial discretion, Lundgren v. McDaniel, 814 F.2d 600, 607 (11th Cir.1987). Because this court agrees with the bankruptcy court's interpretation

---

2. One of the purposes of deducting disposition costs from the secured amount of a creditor's claim appears to be to protect the "creditor['s] bargain[ ] for the right to take possession of the collateral and sell it in the event the debtor defaults and in fashioning adequate protection one must determine what the creditor could have realized upon disposition, taking into account the usual time and expense involved in repossession and sale." 81 B.R. at 991.

of § 506(a), and because it was within the bankruptcy court's discretion to refuse to reopen the evidence in this case, the court finds no error in this aspect of the bankruptcy court's ruling.

Accordingly, this case is REMANDED to the bankruptcy court for a determination of the amount, if any, by which Columbia's secured claim should be reduced due to any allowed prior tax liens. The order of the bankruptcy court declining to deduct disposition costs from the amount of Columbia's secured claim is AFFIRMED.

SO ORDERED.